**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANAI EWAN and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>      - against -<br><br>NATIONAL GRID USA SERVICE COMPANY, INC. and THE BROOKLYN UNION GAS COMPANY,<br><br>                    Defendants. | Case No. 2:17-cv-7472<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Danai Ewan and Charmaine Whyte (collectively "Plaintiffs"), by and through their counsel, on behalf of themselves and the Classes defined herein, plead this Complaint based upon personal knowledge as to Plaintiffs' own acts, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against Defendants National Grid USA Service Company, Inc. and the Brooklyn Union Gas Company (collectively "National Grid" or "Defendants").

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and Classes of customers who received calls to their cellular telephone numbers without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. §64.1200 (hereinafter referred to as the "TCPA"). Defendants and their agent debt collectors and other agents used automated telephone dialing systems and/or automated or prerecorded voice to call Class members' cellular telephone numbers. That conduct violates the TCPA.

1

2.     Defendants are directly liable under the TCPA for all calls made by them or their affiliates for violations of 15 U.S.C. §227(a) and applicable regulations made in this action.

3.     Defendants are also vicariously and/or jointly liable under the TCPA for all calls made on behalf of Defendants for violations of 15 U.S.C. §227(a) and applicable regulations made in this action, including calls made by debt collectors and third parties who served as Defendants' express or implied agents and/or whose conduct was ratified by Defendants.

4.     Plaintiffs and members of the National Grid Direct-Dialed Class and National Grid Agent-Dialed Class were injured as a direct and proximate result of Defendants' and their agents' TCPA violations.

5.     Because Defendants' unlawful acts were and are knowing and willful, Plaintiffs and the Classes are entitled to additional remedies and damages under the TCPA.

## THE PARTIES

6.     Plaintiff Danai Ewan is a resident of Brooklyn, New York.

7.     Plaintiff Charmaine Whyte is a resident of Brooklyn, New York.

8.     Defendants are part of a larger conglomerate that uses the trade name "National Grid."   According to Defendants' United States website, National Grid is "an international electricity and gas company based in the UK and northeastern US ... [that] play[s] a vital role in connecting millions of people safely, reliably and efficiently to the energy they use."   Source: http://www2.nationalgrid.com/about-us/ (last visited May 5, 2016).

9.     The Brooklyn Union Gas Company is organized as a domestic New York corporation, which maintains its principle office at One Metrotech Center, Brooklyn, New York.   The Brooklyn Union Gas Company is a distributor of natural gas in New York and

operates as National Grid.  The Brooklyn Union Gas Company is liable for telephone calls made by it or on its behalf by Defendants' express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

10.     National Grid USA Service Company, Inc. is organized under the laws of Massachusetts.  National Grid USA Service Company, Inc. is authorized with the New York Secretary of State to do business in New York and maintains offices in New York.   As described in a Service Agreement between National Grid USA Service Company, Inc. and Energy North Natural Gas, Inc., dated April 1, 2009, National Grid USA Service Company, Inc., "is a company engaged primarily in the rendering of services to companies in the National Grid USA holding company system."  As provided in Schedule I of that Service Agreement, the services provided by National Grid USA Service Company, Inc. to its National Grid affiliates include, among other services, accounting, auditing, corporate record keeping, customer services, information systems, public information and relations, preparation of applications and registrations, and establishing procedures and standards.   Defendant Brooklyn Union Gas Company acknowledged in Gas Transportation Operating Procedure Manuals published in 2012 and 2017 that National Grid USA Service Company, Inc. "may perform call center operations" for any National Grid subsidiary, including Defendant Brooklyn Union Gas Company.  Upon information and belief, Defendant National Grid USA Service Company, Inc. did in fact operate call centers on Defendant Brooklyn Union Gas Company's behalf and is therefore liable for telephone calls made by it or on its behalf by its express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

**SUBJECT MATTER JURISDICTION**

3

11.     Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §227(b)(3)).

## PERSONAL JURISDICTION

12.     This Court possesses specific personal jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules 302(a) and federal constitutional due process.

13.     This Court possesses general personal jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules 301 and federal constitutional due process.

14.     All Defendants have sufficient minimum contacts with New York and this District, have purposefully availed themselves to doing business in New York and this District, and possess such a significant and continuous presence in New York and this District such as to be considered at home for the purposes of establishing personal jurisdiction.

15.     In addition, Plaintiffs' and the Class members' injuries alleged in this action arise from Defendants' business of providing utility services or services related to those utility services in New York, and result from Defendants' tortious conduct in violation of the TCPA and directing their conduct to have intended effects within New York.

## VENUE

16.     Venue is proper in this District under 28 U.S.C. §1391.

17.     Venue is further proper in this District because this Court is presiding over a related action, *Jenkins v. National Grid USA Serv. Co., Inc*., Case No. 15-cv-01219-JS-GRB.

## THE TELEPHONE CONSUMER PROTECTION ACT

4

18.     In 1991, Congress enacted the TCPA,[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

19.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of TCPA Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

20.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also explicitly recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

21.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4]  The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was

---

[1]     Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. §227).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 *et seq.*

[2]     47 U.S.C. § 227(b)(1)(A)(iii).

[3]     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4]     *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 *FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

provided during the transaction that resulted in the debt owed."[5]

22.     In the same 2008 Declaratory Ruling, the FCC emphasized that creditors and their third party debt collectors may be held liable under the TCPA for debt collection calls:  "A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call. . . . A third party collector may also be liable for a violation of the Commission's rules."

23.     In a 2013 Declaratory Ruling, the FCC reiterated that creditors and sellers acting as principals are vicariously and jointly liable for violations of the TCPA made by agents of the creditor or seller, regardless of whether the agency is express or implied, and including when agents are vested with apparent authority or when the creditor ratifies the agents' illegal acts.[6] The *Dish Network* ruling provides that, "vicarious seller liability under federal common law agency principles is also available for violations of section 227(b)."[7]  It adds that, "allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions."[8]

24.     This Court held that the *Dish Network* Ruling "makes clear that the 2008 FCC

---

[5]     *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

[6]     *In re Joint Petition filed by Dish Network, LLC*, ("*Dish Network*"), 28 F.C.C.R. 6574, 6593 ¶¶ 1, 24, 28, 33-48 (2013).

[7]     *Id*. ¶ 33; *see also id.* ¶ 28 ("[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) ("[The Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations.") (citing *Dish Network).*

[8]     *Dish Network* ¶ 37.

Order illustrates vicarious liability" for a creditor who retains the agency services of a debt collector or other third party that violates the TCPA.   Doc. No. 152 at 21.

25.     In the related action against Defendants, this Court held that plaintiffs, on behalf of the putative classes, pled viable claims that Defendants had directly violated the TCPA by making calls using automated telephone dialing systems and/or using pre-recorded messages. *Jenkins v. National Grid USA Serv. Co., Inc*., Case No. 15-cv-01219-JS-GRB, Dkt. 152 (E.D.N.Y. Mar. 31, 2016).

26.     In the related action against Defendants, this Court held that the plaintiffs, on behalf of the putative classes, pled a viable claim that Defendants violated the TCPA for the outbound telephone calls made by Defendants' agents and vendors.  *Jenkins v. National Grid USA Serv. Co., Inc*., Case No. 15-cv-01219-JS-GRB, Dkt. 222 (E.D.N.Y. Mar. 31, 2017).

## STATEMENT OF FACTS

27.     Defendant Brooklyn Union Gas is a utility provider of natural gas in the New York City Area.

28.     Upon information and belief, defendants National Grid USA Service Company, Inc. operates call centers on Defendant Brooklyn Union Gas Company's behalf and/or retains agents to do the same, and is therefore liable for telephone calls made by it or its agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

29.     Defendants or others operating on their behalf place telephone calls to consumers using autodialers and/or leave prerecorded telephone messages for their customers residing in New York who allegedly owe monies for utility services.

30.     To make these telephone calls, Defendants employ automatic telephone dialing

systems and artificial or prerecorded voices to call Class members' cellular telephone numbers.

31.     A publicly available job posting by "National Grid" dated May 10, 2013 confirms that Defendants used an automatic telephone dialing system.  That job posting sought a "Supervisor" for "Outbound Collections" for a position located in the "NYC Area," the service area for Defendant Brooklyn Union Gas Company.   The job posting stated that candidates for this job needed "[e]xperience using a predictive dialer, designing call campaigns and dialer collection strategies."   Upon information and belief, Defendants requested that job candidates have experience using a predictive dialer because Defendants use a predictive dialer to call customers of Defendant Brooklyn Union Gas Company.  Upon information and belief, Defendants have continuously used this predictive dialer through the present.

32.     Other publicly available documents confirm that Defendants have continuously used a predictive dialer to call their New York City customers.  For example, one National Grid customer service representative based in the New York City area has posted on his LinkedIn profile that he has worked as a "Customer Rep since October 2008 in National Grid USA" and that one of his job duties in that role is "[c]ommunicating with customers by telephone via a predictive dialer."   The profile states that he has been performing this task between "October 2008 – Present."   Upon information and belief, Defendants have used a predictive dialer to call their New York City customers continuously between October 2008 and the present.

33.     Defendants also concede they use prerecorded messages when calling their customers.  In the 2014 National Grid Petition, Defendants admitted to the FCC that they routinely use "prerecorded calls" as a means of communicating with their customers.  Feb. 18, 2014 Petition at 4.  The 2014 National Grid Petition states:  "These prerecorded calls are an

important tool that National Grid used to keep its customers informed of service issues on a timely basis." The same 2014 National Grid Petition concedes that many of the prerecorded calls are made to Defendants' customers' cellular telephones.

34. Defendants also conceded that they use prerecorded messages in a submission to the FCC on March 26, 2015. In that submission, Defendants additionally admitted to using prerecorded calls as means to collect "overdue bills" and that their communications "can include prerecorded and autodialed calls." March 26, 2015 Submission at 3, 4. That FCC submission concedes that many of the prerecorded calls are made to Defendants' customers' cellular telephones.

35. Defendants jointly retain debt collectors to make calls on behalf of Defendants to collect debts allegedly owed by Defendants' utility customers.

36. Defendants' debt collectors also use automatic telephone dialing systems and artificial or prerecorded voices to call Class members' cellular telephone numbers.

37. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiffs and Class Members provided express consent within the meaning of the statute.[9]

38. Neither Plaintiffs nor the other members of the Classes provided their prior express consent during the transaction that resulted in the claimed debt owed to permit Defendants or others operating on their behalf to make automated telephone calls to Plaintiffs' or Class members' cellular telephone numbers.

39. Defendants' and their debt collectors' and other agents' calls to Plaintiffs' and

---

[9] *See 2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶10).

Class members' cellular phones were not "for emergency purposes" as described in 47 U.S.C. §227(b)(1)(A).

40.     In addition to retaining their debt collectors as express and implied agents, Defendants vest their debt collectors with apparent authority.  They do so by permitting their debt collectors to represent to consumers in letters and during telephone calls that the debt collectors are authorized to act on Defendants' behalf.

41.     Upon information and belief, Defendants ratify their agent debt collectors' actions by knowingly accepting the benefits of their conduct (*i.e.*, by accepting and retaining monies collected by their debt collectors from Class members).

## TELEPHONE CALLS TO PLAINTIFF EWAN'S CELLULAR TELEPHONES

42.     Plaintiff Ewan was a utility customer of Defendants for many years.  She received natural gas from BUG at two Brooklyn apartments she resided in between 2005 and 2017.

43.     Plaintiff Ewan did not provide Defendants or their agents with prior express consent to call her cellular telephone number(s) utilizing an "artificial or prerecorded voice" or by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

44.     Plaintiff Ewan orally told Defendants' representatives between March 2011 and 2017 to stop calling her on her cellular telephones about alleged debts.

45.     Defendants placed multiple calls to Plaintiff Ewan's cellular telephone with the last four digits 9553 in or around 2011,[10] even though she did not provide prior express consent

---

[10] Plaintiffs have identified their telephone numbers to Defendants in advance of filing this complaint.  Only the last four digits of Plaintiffs' phone numbers are identified in this Complaint to preserve Plaintiffs' privacy.

to Defendants to make these calls. These calls concerned allegations about a debt she purportedly owed Defendants. Plaintiff Ewan told Defendants' representatives not to call her about alleged debts on this number, but Defendants disregarded her request and nonetheless called this number about alleged debts.

46.     Defendants also placed multiple calls to Plaintiff Ewan's cellular telephone with the last four digits 7912 between 2012 and 2016, even though she did not provide prior express consent to Defendants to receive these calls. These calls concerned allegations about a debt she purportedly owed Defendants. Plaintiff Ewan also told Defendants' representatives not to call her about alleged debts on this number, but Defendants and/or their agents disregarded her request, and called this number about alleged debts.

47.     Upon information and belief, Defendants used their predictive dialer to make some or all of the calls described in paragraphs 45 and 46.

48.     Upon information and belief, Defendants employed pre-recorded messages on some or all of the calls described in paragraphs 45 and 46.

49.     Defendants' debt collectors Credit Protection Association and NCO Financial Systems, Inc., or another of Defendants' agent debt collectors, placed calls to Plaintiff Ewan's cellular telephone with the last four digits 3500 between 2016 and the present on behalf of Defendants, even though she did not provide prior express consent to Defendants or their debt collectors to receive these calls. These calls concerned allegations about a debt she purportedly owed Defendants.

50.     Upon information and belief, and as other courts have held, Credit Protection Association uses automatic telephone dialing systems to make calls. *See, e.g.*, *Schumacher v.*

*Credit Prot. Ass'n*, No. 4:13-CV-00164-SEB, 2015 WL 5786139, at *8 (S.D. Ind. Sept. 30, 2015) ("Because Dial Connection is an ATDS under the TCPA, CPA violated the TCPA when it repeatedly called Mr. Schumacher."). Upon information and belief, Credit Protection Association used automatic telephone dialing systems to make calls on behalf of Defendants to Plaintiff Ewan.

51.     Upon information and belief, NCO Group used automatic telephone dialing systems to make calls. NCO Group stated in its 10-K filing with the Securities and Exchange Commission for the fiscal year ended December 31, 2012: "We have implemented a scalable technical infrastructure that can flexibly support growing client volume while delivering a high level of reliability and service. Our customer contact centers feature advanced technologies, including predictive dialers, automated call distribution systems, digital switching, Voice over Internet Protocol ("VoIP") technologies, digital recording, workforce management systems and customized software solutions, including the NCO SYSTEM INTEGRATOR Interface Manager. . . . Our ARM call centers utilize both virtual and onsite predictive dialers to address our low-balance, high-volume accounts, and our CRM centers utilize predictive dialers to conduct our clients' outbound calling campaigns. These systems scan our databases, simultaneously initiate calls on dedicated predictive dialers, and determine if a live connection is made. Upon determining that a live connection has been made, the computer immediately switches the call to an available representative and instantaneously displays the associated account record on the representative's workstation. Calls that reach other signals, such as a busy signal, telephone company intercept or no answer, are tagged for statistical analysis and placed in priority recall queues or multiple-pass calling cycles. NCO systems also automate almost all

record keeping and workflow activities including letter and report generation. We believe that our automated method of operations dramatically improves the productivity of our staff." Upon information and belief, NCO Group used the same automatic telephone dialing systems to make calls to Plaintiff Ewan on behalf of Defendants.

**TELEPHONE CALLS TO PLAINTIFF WHYTE'S CELLULAR TELEPHONES**

52.     Plaintiff Whyte was a utility customer of Defendants for many years.   She received natural gas from BUG at her Brooklyn apartment between 2009 and 2017.

53.     Plaintiff Whyte did not provide Defendants or their agents with prior express consent to call her cellular telephone number(s) utilizing an "artificial or prerecorded voice" or by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

54.     Defendants and/or Defendants' agents placed multiple telephone calls to Plaintiff Whyte's cellular telephone with the last four digits 8052 since at least as early as 2016.  Plaintiff received prerecorded messages on many of these calls.

55.     Upon information and belief, Defendants and/or their agents used their predictive dialer(s) to make some or all of the calls described in paragraph 55.

56.     Upon information and belief, Plaintiff Whyte also received multiple calls from debt collectors on behalf of Defendants, including calls by automatic telephone dialing systems and calls that involved the use of pre-recorded messages. Credit Protection Association, or another of Defendants' agent debt collectors, called Plaintiff Whyte's cellular telephone with the last four digits 8052 on behalf of Defendants.

57.     Upon information and belief, and as other courts have held, Credit Protection Association uses automatic telephone dialing systems to make calls.  *See, e.g.*, *Schumacher v.*

*Credit Prot. Ass'n*, No. 4:13-CV-00164-SEB, 2015 WL 5786139, at *8 (S.D. Ind. Sept. 30, 2015) ("Because Dial Connection is an ATDS under the TCPA, CPA violated the TCPA when it repeatedly called Mr. Schumacher."). Upon information and belief, Credit Protection Association used automatic telephone dialing systems to make calls on behalf of Defendants to Plaintiff Whyte.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs together and individually bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on their own behalves and on behalf of the following Classes defined as follows:

**1. National Grid Direct-Dialed Class**:  All persons in the United States who from March 7, 2011 to the present (the "Class Period") (1) received non-emergency calls from Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

**2. National Grid Agent-Dialed Class**:  All persons in the United States and its territories who from March 7, 2011 to the present (the "Class Period") (1) received non-emergency calls from any agent retained by Defendants (including debt collectors); (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for

such calls during the transaction that resulted in the debt owed.

Excluded from the Classes are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are all employees, officers and directors of the debt collectors retained by National Grid.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

59.     The Classes satisfy the FED. R. CIV. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

60.     Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendants and their retained debt collectors.  However, Defendants represent to providing gas or electric services to millions of customers residing in New York.  Accordingly, based Defendants' representations as to their market share, Plaintiffs reasonably believe that the Classes encompass at minimum many thousands of consumers.

61.     Plaintiffs and all members of the Classes have been harmed by the unlawful acts of Defendants, whose privacy was violated and who were subject to annoying and harassing calls that constitute a nuisance.

62.     The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The identities of the Class members can be readily ascertained from Defendants' and their debt collectors' call records.

63.     There are well-defined, nearly identical, questions of law and fact affecting all parties.  Common question of law and fact raised in this action concerning the Classes' claims include the following:

(a)     Whether the non-emergency calls made to Plaintiffs, and members of the Classes' cellular telephone numbers used an automatic telephone dialing system and/or an artificial or prerecorded voice;

(b)     Whether such calls were made by or on behalf of Defendants;

(c)     Whether Defendants retained agents to call Class members;

(d)     Whether Defendants provided express, implied or apparent authority to third parties to call Class members' cellular telephones;

(e)     Whether Defendants ratified the acts of third parties retained by Defendants to call Class members' cellular telephones;

(f)     Whether Defendants violated the TCPA;

(g)     Whether Defendants are vicariously and jointly liable for TCPA;

(h)     Whether Plaintiffs and the Classes are entitled to damages, declaratory relief and/or injunctive relief as a result of Defendants' violations of the TCPA; and

(i)     Whether Defendants' conduct was knowing or willful.

64.     As people who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each member of the Classes.

65.     Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs

have retained able counsel with extensive experience in prosecuting class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.  Plaintiffs' interests are coincident with, and not antagonistic to, the interests of the Classes.

66.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

67.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendants to comply with the TCPA.  Since the damages, or statutory damages, suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiffs will encounter no difficulty in managing this action as a class action.

69.     Defendants have acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes.  Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## TOLLING OF THE STATUTE OF LIMITATIONS

70.     Plaintiffs are members of (1) the "Automatic Dialer Class"[11] and "Artificial Voice Class"[12] alleged in the Complaint in *Jenkins v. National Grid*, No. 15-cv-01219, Dkt No. 1 (March 9, 2015), (2) the "National Grid Direct-Dialed Class"[13] and "National Grid Debt Collector-Dialed Class"[14] alleged in the First Amended Complaint in *Jenkins v. National Grid*, No. 15-cv-01219, Dkt No. 99 (July 2, 2015), and (3) the "National Grid Direct Dialed Class"[15] and the "National Grid Agent-Dialed Class"[16] alleged in the Revised Second Amended

---

[11] The Automatic Dialer Class was defined as "All persons in the United States and its territories who from March 7, 2011 to the present (the 'Class Period') (1) received calls from any debt collector retained by National Grid; (2) made through the use of any automatic telephone dialing system; (3) on a cellular telephone number; (4) when the person called did not consent to receive telephone calls from National Grid or the calling debt collector."

[12] The Artificial Voice Class was defined as "All persons in the United States and its territories who from March 7, 2011 to the present (the 'Class Period') (1) received calls from any debt collector retained by National Grid; (2) made using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not consent to receive telephone calls from National Grid or the calling debt collector."

[13] The National Grid Direct-Dialed Class was defined as "All persons in the United States who from March 7, 2011 to the present (the 'Class Period') (1) received nonemergency calls from Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed."

[14] The National Grid Debt Collector-Dialed Class was defined as "All persons in the United States and its territories who from March 7, 2011 to the present (the 'Class Period') (1) received non-emergency calls from any debt collector on behalf of Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed."

[15] The National Grid Direct-Dialed Class is currently defined as "All persons in the United States who from March 7, 2011 to the present (the 'Class Period') (1) received nonemergency calls from Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed."

[16] The National Grid Collector-Dialed Class is currently defined as "All persons in the

Complaint in *Jenkins v. National Grid*, No. 15-cv-01219, Dkt No. 228 (April 14, 2017). Plaintiffs have moved to intervene in the *Jenkins v. National Grid* matter, and the *Jenkins* plaintiffs have moved to join them as co-plaintiffs, but Defendants and their affiliates are currently opposing the motions.  Because Plaintiffs are members of proposed classes in pending litigations, the statute of limitations is tolled.

71.     Defendants' have engaged in a pattern of continuously calling Plaintiffs in violation of the Telephone Consumer Protection Act, and the violations have continued since at least as late as 2017.  Defendants' continuing violation of the Telephone Consumer Protection Act tolls the statute of limitations.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE Consumer PROTECTION ACT

**(PLAINTIFFS AND THE NATIONAL GRID DIRECT-DIALED  CLASS AGAINST ALL DEFENDANTS)**

72.     Plaintiffs restate, reallege, and incorporate by reference the foregoing paragraphs.

73.     Plaintiffs and the members of the National Grid Direct-Dialed Class are "persons" under the TCPA.

74.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

_____

United States and its territories who from March 7, 2011 to the present (the 'Class Period') (1) received non-emergency calls from any debt collector on behalf of Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed."

party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

75.     The foregoing acts and omissions of Defendants with respect to Plaintiffs and the National Grid Direct-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A)(iii).

76.     Each call to Plaintiffs' and the National Grid Direct-Dialed Class members' cellular telephone numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice", within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

77.     Defendants made or caused to be made the telephone calls to Plaintiffs and members of the National Grid Direct-Dialed Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

78.     With respect to Plaintiff Ewan, on many occasions between 2011 and 2017, on dates and at times known to Defendants, Defendants, or one of them, called Plaintiff Ewan's cellular telephone numbers and used pre-recorded messages.

79.     With respect to Plaintiff Whyte, on many occasions, at least as early as 2016, on dates and at times known to Defendants, Defendants or one of them, called Plaintiff Whyte's cellular telephone number and use prerecorded messages.

80.     Plaintiffs and the National Grid Direct-Dialed Class are entitled to pursue claims against Defendants during the Class Periods for an injunction, pursuant to 47 U.S.C.

§227(b)(3)(A), to enjoin Defendants' violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiffs and the National Grid Direct-Dialed Class seek to enjoin Defendants' violations of the TCPA.

81.     Plaintiffs and the National Grid Direct-Dialed Class are entitled to an award of statutory damages of $500.00 for each call in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

82.     Defendants' violations of TCPA Section 227(b)(1)(A)(iii) were willful and/or knowing.  As a result, Plaintiffs and the National Grid Direct-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

83.     Plaintiffs and the National Grid Direct-Dialed Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF TELEPHONE Consumer PROTECTION ACT

**(PLAINTIFFS AND THE NATIONAL GRID AGENT-DIALED CLASS AGAINST ALL DEFENDANTS)**

84.     Plaintiffs restate, reallege, and incorporate by reference the foregoing paragraphs.

85.     Plaintiffs and the members of the National Grid Agent-Dialed Class are "persons" under the TCPA.

86.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if
the  recipient is within the United States (A) to make any call (other than a call

21

made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

87.     Defendants are vicariously and jointly liability for the violations of TCPA Section 227(b)(1)(A) made by their agents, including debt collectors and third-parties retained by Defendants to call Class members' cellular telephones.

88.     Defendants acted in concert with their agent debt collectors and other retained-third parties to jointly violate the TCPA Section 227(b)(1)(A).

89.     Defendants provided actual authority to their agent debt collectors and other retained-third parties in form of express and implied acts and authorizations sufficient to form a principal and agent relationship.

90.     Upon information and belief, Defendants exercised control over the acts and practices of their agent debt collectors and other third parties retained to call Class members' cellular telephone numbers by the use of contracts providing Defendants with control powers.

91.     Defendants ratified that acts of their agent debt collectors and other retained-third parties retained to call Class members' cellular telephone numbers.

92.     The foregoing acts and omissions of Defendants with respect to Plaintiffs and the National Grid Agent-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A).

93.     Each call by debt collectors or other retained-third parties serving as Defendants' agents to Plaintiffs' and the National Grid Agent-Dialed Class members' cellular telephone

22

numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice," within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

94.     Defendants made or caused to be made the telephone calls to Plaintiffs and members of the National Grid Agent-Dialed Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

95.     With respect to Plaintiff Ewan, debt collectors Credit Protection Association and NCO Group called Plaintiff Ewan's cellular telephone numbers, while serving as Defendants' agents, using an automatic telephone dialing system or employing a prerecorded or artificial voice.

96.     With respect to Plaintiff Whyte, debt collector Credit Protection Association called Plaintiff Whyte's cellular telephone number, while serving as Defendants' agent, using an automatic telephone dialing system or employing a prerecorded or artificial voice.

97.     Plaintiffs and the National Grid Agent-Dialed Class are entitled to an award of statutory damages of $500.00 for each call made by Defendants' agents in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

98.     Defendants' and their agents' violations of TCPA Section 227(b)(1)(A)(iii) were willful and/or knowing.   As a result, Plaintiffs and the National Grid Debt Collector-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

99.     Plaintiffs and the National Grid Agent-Dialed Class are also entitled to an award

of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants, individually, and jointly and severally, as follows:

A.      An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), establishing any appropriate Classes the Court deems appropriate, and appointing Plaintiffs and their counsel to represent the Classes;

B.      An order declaring Defendants' acts and practices constitute violations of the TCPA;

C.      An order declaring Defendants' agents acts and practices constitute violations of the TCPA, resulting in the vicarious and joint liability of Defendants;

D.      Statutory damages pursuant to the TCPA of $500.00 for each call that violated the TCPA, and up to $1,500.00 for each of Defendants' or their agents' willful and/or knowing violations of the TCPA, as provided by statute;

E.      A permanent injunction to enjoin Defendants' and their agents' violations of the TCPA; and

F.      Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the extent authorized by law.

DATED: December 22, 2017

**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**

<u>/s/ Jonathan D. Selbin</u>

Jonathan D. Selbin
Douglas I. Cuthbertson
John T. Nicolaou
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.  (212) 355-9500
Email:  jselbin@lchb.com
Email:  dcuthbertson@lchb.com
Email:  jnicolaou@lchb.com

**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**

Daniel M. Hutchinson (*pro hac vice* to be submitted)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel.  (415) 956-1000
 Email:  dhutchinson@lchb.com

**TUSA P.C.**

Joseph S. Tusa
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100
Email:  joseph.tusapc@gmail.com

- and –

150 Motor Parkway, Ste. 401
Hauppauge, NY 11788
Tel. (631) 407-5100

*Attorneys for Plaintiffs
and proposed Class Counsel*